FAIR DEAL AUTO SALES, Appellant,

v.

Janet BRANTLEY, Appellee.

No. 01–99–01374–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 6, 2000.

H. Wayne Bettis, Houston, for Appellant.

Linda K. McCloud, Houston, for Appellee.

Panel consists of Justices O'CONNOR, TAFT, and SMITH.*

## OPINION

TIM TAFT, Justice.

Fair Deal Auto Sales, appellant, challenges a $2,000 judgment rendered in favor of Janet Brantley, appellee, on her claim that Fair Deal wrongfully repossessed her automobile. Brantley recovered the judgment after Fair Deal appealed an earlier, adverse judgment of $500 from the justice court. Fair Deal challenges the factual sufficiency of the evidence to support the judgment. Brantley contends Fair Deal's appeal is frivolous and asks us to award her damages as a

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

sanction. We affirm, and deny Brantley's motion for sanction.

## Facts and Procedural History

Brantley agreed to purchase a 1992 Ford Escort from Fair Deal. The car was for her son, who was receiving social security benefits. Brantley could not recall the total purchase price of the car, but knew that the monthly payments were low enough that her son could pay them out of his social security check, and would be due when he received his check. Fair Deal told Brantley that $1,000 was an adequate down payment, but she paid $700 more as assurance that her son would be able to make the payments. Brantley claimed she signed the motor vehicle retail installment contract (financing agreement) and "a lot" of other papers, in blank; she explained that it was late in the day and she had to leave the dealership to get verification of insurance coverage.

The financing agreement introduced into evidence shows a purchase date of November 23, 1998. The agreement is signed by Brantley and a Fair Deal representative, but the signatures are not dated. The financing agreement shows a purchase price of $8,783.62, a $2,100 down payment, and a total financed amount of $5,413.20, payable in 29 payments of $230 each. The first payment was due on December 23, 1998.

The financing agreement also lists two additional payments of $250 each. These are described as "deferred" down payments and were due before any other payment: the first on November 30, and the second on December 14, 1998. Brantley denied ever agreeing to pay these amounts as deferred down payments. She claimed that in putting $1,700 down she had already paid $700 more than the $1,000 minimum needed for down payment. While Brantley conceded an additional $500 was

due, she understood the money was for tax, title, and license. Moreover, a Fair Deal representative, who described himself as a manager, assured her she could pay the additional $500 with her first payment on December 23, 1998.

Brantley claimed she had the car only a week and a half when Fair Deal repossessed it in November and that the repossession happened before any payment was due, but after she had installed a $500 radio in the car. She insisted she was not behind on any payments. Fair Deal countered that the financing agreement authorized repossession on December 14, 1998, because Brantley had missed the deferred down payment due that day and the earlier payment due on November 30, 1998.

Brantley sued Fair Deal in justice court, claiming wrongful repossession. After an initial default judgment was set aside, she obtained a $500 judgment. Fair Deal appealed that judgment in this action, which was tried to the court. In rendering judgment in Brantley's favor for $2,000, plus interest and costs, the trial court announced, "To me, in general, this entire thing looks like a big rip-off." The court emphasized that it was impossible to tell when the financing agreement was signed, and that Brantley was "incredibly adamant when the car was repossessed." Neither party asked the trial court to prepare findings of fact and conclusions of law.

## Sufficiency of the Evidence

Fair Deal brings two issues. The first issue challenges whether Brantley met her burden of proof by the great weight and preponderance of the evidence. In the second issue, Fair Deal claims the evidence is factually insufficient to support the verdict. We construe both issues as challenging the factual sufficiency of the evidence. Tex.R.App. P. 38.1(e).[1]

---

1. Brantley suggests that Fair Deal's first issue might arguably be construed as raising challenges to the legal sufficiency of the evidence. While we disagree, to the extent the first issue

may be construed as a legal sufficiency challenge, Fair Deal has waived it by not providing either argument or supporting authority. *See Wade v. Comm'n for Lawyer Discipline,*

## Standard of Review

When findings of fact are neither filed nor requested after a bench trial, the judgment of the trial court implies all findings necessary to support it, provided the necessary findings are raised by the pleadings and supported by the evidence, and the decision can be sustained on any reasonable theory consistent with the evidence and the applicable law. *Wade*, 961 S.W.2d at 374; *Friedman v. New Westbury Village Assocs.*, 787 S.W.2d 154, 158 (Tex.App.—Houston [1st Dist.] 1990, no writ). When, as here, the record contains the reporter's record of the trial, the trial court's implied findings may be challenged for legal and factual sufficiency, under the same standards that govern challenges to a jury's findings. *Wade*, 961 S.W.2d at 374. The appellant's burden on appeal is to show that the judgment of the court below cannot be sustained by any theory raised by the evidence. *Friedman*, 787 S.W.2d at 157.

In determining factual sufficiency, this Court weighs all the evidence, both supporting and conflicting, and may set the finding aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Commission of Contracts v. Arriba, Ltd.*, 882 S.W.2d 576, 582 (Tex.App.—Houston [1st Dist.] 1994, no writ). In an appeal from a bench trial, we may not invade the role of the trial court, as finder of fact, who is the sole judge of the credibility of the witnesses and the weight to give their testimony, and alone determines whether to accept or reject all or any part of that testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580–81 (Tex.App.—Houston [1st Dist.] 1997, pet. denied).

## Wrongful Repossession

Unless a contract provides otherwise, when a debtor defaults, a secured party, like Fair Deal, has a right to take possession of property securing an indebtedness. TEX. BUS. & COMM.CODE ANN. § 9.503 (Vernon 1991); *Kirkman v. North State Bank*, 476 S.W.2d 958, 959 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). Unlawful repossession of property subject to a security agreement violates section 9.503 of the Business and Commerce Code and entitles the debtor to damages in the form of the debtor's equity in the property. TEX. BUS. & COMM.CODE ANN. § 9.503; *Ford Motor Credit Co. v. Garcia*, 595 S.W.2d 602, 605 (Tex.Civ.App.—Waco 1980, no writ).

Brantley's pleadings allege that Fair Deal repossessed her car wrongfully, specifically, "before car payment due on 12–23–94," although she had been promised "several times" that she could pay the $500, which she understood "was for tax, title, and license," when she made the first payment. These pleadings state a claim for wrongful repossession under section 9.503 of the Business and Commerce Code. Because they demonstrate that Brantley relied on the assurances that she could pay the additional $500 with her first payment, the pleadings also state claims for negligent misrepresentation, violations of the Deceptive Trade Practices Act, and breach of contract. *See Villarreal v. Elizondo*, 831 S.W.2d 474, 478 (Tex.App.—Corpus Christi 1992, no writ); *Sparks v. Odom*, 389 S.W.2d 330, 331 (Tex.Civ.App.—Waco 1965, no writ).

In disputing the sufficiency of the evidence to support the judgment, Fair Deal relies on the terms of the financing agreement, which required Brantley to pay $250 by November 30, 1998, an obligation that Brantley concedes she did not meet. Paragraph 8 of the agreement allowed Fair Deal to declare the entire amount due and payable if Brantley defaulted, or if Fair Deal believed, in good faith, that Brantley's ability to pay was impaired. The same paragraph provided that, on exercising its right to declare the entire amount due and payable, Fair Deal could

961 S.W.2d 366, 373 (Tex.App.—Houston [1st Dist.] 1997, no writ).

repossess the car, as authorized by the Texas Business and Commerce Code.

By relying exclusively on the terms of the financing agreement, Fair Deal ignores the evidence that proved so persuasive to the trial court. As noted above, the trial court dismissed the entire transaction as a "rip-off," in part because it was impossible to tell when the contract was even signed, and also because Brantley was "incredibly adamant" that the car was repossessed in November, when she had the car only a week and a half, and before any payment was due. Even if Fair Deal repossessed the car on the last day of November, no payment was due until that day under the express terms of the financing agreement on which Fair Deal relies. Moreover, Fair Deal does not acknowledge Brantley's claims that the additional $500 was for tax, title, and license, not deferred down payment; that she signed the financing agreement and "a lot" of papers in blank; that she never agreed to pay a deferred down payment, having already paid extra to keep the payments affordable and within her son's social security benefits; and that a Fair Deal representative assured her she could pay the additional $500 when her first payment was due on December 23, 1998.

The evidence was amply sufficient, under Brantley's pleadings, to support the trial court's finding that Brantley was entitled to prevail and recover $2,000 in damages against Fair Deal, whether for wrongful repossession, violations of the DTPA, breach of contract, or negligent misrepresentation. These theories are reasonable and consistent with the evidence and the governing law. Because we must defer to the trial judge, as finder of fact, we cannot say he erred by adopting Brantley's version of the facts and rejecting Fair Deal's. Accordingly, his decision was neither clearly wrong nor unjust.

We overrule Fair Deal's first and second issues.

## Rule 45  Damages

Brantley asks us to award damages under Rule 45 of the Rules of Appellate Procedure because Fair Deal's appeal is frivolous. TEX.R.APP. P 45. Before imposing damages for a frivolous appeal, this Court must decide that Fair Deal had no reasonable ground to believe that the judgment would be reversed and that the appeal was not filed in good faith, but solely for delay. *Cullen Ctr. Bank & Trust v. Wonzer*, 874 S.W.2d 757, 760 (Tex.App.—Houston [1st Dist.] 1994, no writ); *see Jackson v. Biotectronics, Inc.*, 937 S.W.2d 38, 46 (Tex.App.—Houston [14th Dist.] 1996, no writ).

As addressed above, Fair Deal relied exclusively on the terms of the financing agreement, which it claimed Brantley breached, and which authorize repossession under the Business and Commerce Code, but ignored Brantley's conflicting testimony. While Fair Deal's arguments ignore the applicable standard of review, we find no basis for concluding that Fair Deal had no reasonable ground to believe that the judgment would be reversed, and brought the appeal in bad faith and solely to delay payment.

We overrule Brantley's motion for sanctions.

## Conclusion

We affirm the judgment of the trial court. We deny Brantley's motion for rule 45 sanctions.